# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANIEL MCCRAY,            :
      Plaintiff,          :
                :         CASE NO.
      v.              :         3:19-CV-1279 (DJS)
                :
WARDEN BARONE, ET AL.,    :
      Defendants.      :

## INITIAL REVIEW ORDER

Plaintiff Daniel McCray ("McCray"), who is currently incarcerated at the Garner Correctional Institution in Newtown, Connecticut, filed a complaint *pro se* pursuant to 42 U.S.C. § 1983 against twelve Department of Correction ("DOC") officials: Warden Barone, Deputy Warden Roach, Correction Officer Milliun, Correction Officers John Does 1-4, Lieutenants McCreary, Milhaliak, and Danik, Captain Stanley, and Nurse David Anglade.[1] Compl., ECF No. 1. He is suing Captain Stanley in his individual capacity and ten of the other defendants in both their individual and official capacities[2]. *Id.* at 9-11.. McCray seeks monetary, injunctive, and declaratory relief against the defendants for violating his Eighth Amendment protection against cruel and unusual punishment and Fourteenth Amendment right to due process during the time McCray was a pretrial detainee at the MacDougall-Walker Correctional Institution in Suffield, Connecticut.  *See id.* at 8-9, 15-16. On September 5, 2019, Magistrate Judge William I. Garfinkel granted Mr. McCray's motion to proceed *in forma pauperis*. *See* Order No. 11. For the following reasons, the Complaint is dismissed in part.

---

[1] McCray identifies this last defendant as "Nurse Dave." The Court has checked with the DOC Office of Legal Affairs, which identified one nurse at MacDougall-Walker Correctional Institution named David Anglade. Thus, the Court presumes that this is the defendant whom Mr. McCray is suing in this action.

[2] McCray's Complaint does not specify in what capacity(ies) he is suing Officer Milliun.

## I. FACTUAL ALLEGATIONS

On May 7, 2019, while confined at the MacDougall-Walker Correctional Institution and attending outside recreation, McCray was approached by another inmate who repeatedly punched him in the facial area. Compl. ¶ 10. This incident occurred "right in front of" of Officer Milliun ("Milliun"). *Id.* McCray immediately told Milliun what was occurring, but Milliun refused to call a "Code Blue," which signals an inmate fight. *Id.* at ¶ 11. Milliun stated that McCray "deserved to [get] beat up" because he was confined on sexual offender charges. *Id.* at ¶ 12. McCray was visibly bleeding from his lip and suffered an injury to his eye, but  Milliun did not summon medical assistance for him. *Id.* at ¶ 13.

Four other officers, John Does 1, 2, 3, and 4, were working in the unit where McCray was housed on May 7, 2019. Compl. ¶ 14. McCray informed all four of them that he had just been assaulted by another inmate and requested that they contact the medical unit so that he could receive treatment for his injuries. *Id.* at ¶ 15. All four officers laughed and denied him medical assistance, telling him, "That's what a sex offender deserves." *Id.* None of the officers reported the incident. *Id.*

Later that night, Nurse Anglade ("Anglade") was distributing medications in McCray's unit. Compl.   ¶ 16. When Anglade arrived at McCray's cell, McCray showed him his bloody lip and eye, which he sustained during the assault, and requested medical care. *Id.*  Anglade told McCray he could not help him. *Id.*

The next day, McCray stopped Captain Stanley and Lieutenants Milhaliak, McCreary, and Danik during their unit tours. Compl. ¶ 17. He notified them that he had been assaulted, that the assault had not been reported, and that he was continually denied medical treatment for his injuries. *Id.* None of those officials summoned medical assistance for McCray or reported the

assault. *Id.* The May 7, 2019 incident involving McCray was not documented until two days later. *Id.* at ¶ 18.

McCray wrote to Warden Barone and Deputy Warden Roach about the incident and the denial of medical care but neither official took any action in response. Compl. ¶ 19. During a unit tour, McCray spoke with both of these defendants in person and asked them why they were "not properly supervising" or "training" their employees to ensure compliance with procedures regarding inmate assaults. *Id.* at ¶ 20. Both Warden Barone and Deputy Warden Roach told McCray to "shut up and stop raping people." *Id.*

McCray's lip and eye injuries have still not been properly evaluated and treated. Compl. ¶ 21. He has been called a snitch and has received threats of retaliation for filing the instant action. *Id.*

## II.  STANDARD OF REVIEW

This Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  McCray must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).

### III.  ANALYSIS

McCray claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment and his Fourteenth Amendment right to due process by failing to protect him from the assault and acting with deliberate indifference to his safety and medical needs. Compl. at 9, 15. McCray alleges in his Complaint that at the time of  the incidents in question he was "being held on sex offender [charges] in criminal court that he has not been convicted of." Compl. ¶ 12. The Court also notes that the Connecticut Department of Correction website lists McCray as an "unsentenced" inmate.[3] For purposes of this ruling, the Court concludes that McCray was an unsentenced pretrial detainee and will analyze his constitutional claims under the established standards for pretrial detainees.

Because  McCray was a pretrial detainee at the time of the alleged events, and not a sentenced prisoner, his claims are best analyzed under the Fourteenth Amendment, not the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment.").  Therefore, the Court will analyze his claims under the Fourteenth Amendment and dismiss the Eighth Amendment claims.

To prevail on a claim that an official failed to protect him from harm or acted with deliberate indifference to his safety and/or medical needs, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even

---

[3]*See* http://ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=410275.

though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

Construed liberally, McCray's allegations state a plausible Fourteenth Amendment claim against the defendants in their individual capacities for failing to protect him from the assault, refusing to report the incident, and/or refusing to provide him with medical attention thereafter. Thus, the Court will permit the Fourteenth Amendment claim to proceed against the defendants for damages at this time.

In addition to damages, McCray seeks a "declaratory judgment stating that [his constitutional] rights were violated by the defendants." Compl. at 16. He also seeks injunctive relief in the form of an order for the defendants to (1) "permit [him] to order items from the Keefe catalog, the Walenhorsts National and Music Catalog, [and] Books 'N' Thing[s] Catalog;" and (2) transfer him to Garner Correctional Institution where he could be managed as a level-four mental health inmate and treated for his mental illness. *Id.* Declaratory relief operates "to adjudicate disputes before either side suffers great damage." *In re Combustion Equip. Associates, Inc.*, 838 F.2d 35, 37 (2d Cir. 1988). McCray has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Moreover, his requests for injunctive relief are completely unrelated to the allegations in his complaint.[4] *See McMillian v. Walters*, No. 9:16-CV-0277 (MAD/DEP), 2017 WL 3973932, at *3-4 (N.D.N.Y. Sept. 8, 2017) (denying a request for injunctive relief that

---

[4] The Court notes that McCray is, in any event currently incarcerated at the Garner Correctional Institution.

was unrelated to the named defendant and the claims in plaintiff's complaint). Therefore, the requests for declaratory and injunctive relief are dismissed.

## ORDERS

(1) The Fourteenth Amendment due process claims may proceed against the defendants in their individual capacities for damages.

(2) All claims against the defendants in their official capacities are dismissed.

(3) The requests for injunctive and declaratory relief are dismissed.

(4) The clerk is directed to replace defendant "Nurse Dave" with "Nurse David Anglade."

(5) The clerk shall verify the current work addresses for defendants Barone, Roach, Milliun, Milhaliak, McCreary, Stanley, Danik, and Anglade with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint, ECF No. 1, to them at the confirmed addresses within **twenty-one (21) days** of this Order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(6) Because the plaintiff has not properly identified John Does 1, 2, 3, and 4, the Court cannot serve those defendants at this time. Within **ninety (90) days** from the date of this Order, McCray must conduct discovery and file a notice with the Court with the first and last names, and any other identifying information, for each of these defendants. If McCray properly identifies these defendants, the Court will direct service of the Complaint on them in their

individual capacities. **Failure to file the required notice within ninety (90) days from the date of this Order will result in the dismissal of all claims against those defendants.**

(7)  The clerk shall mail a courtesy copy of the Complaint, ECF No. 1, and this Order to the DOC Office of Legal Affairs.

(8)  The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(9)  Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests should not be filed with the Court.

(10)    The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders  (2018 Orders; CTAO-18-27).

(11)    All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(12)    According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can, if warranted, be granted absent objection.

(13)    If the plaintiff changes his address at any time during the litigation of this

case, Local Court Rule 83.1(c)2 provides that he **MUST** notify the Court. Failure to do so can

result in the dismissal of the case. The plaintiff must give notice of a new address even if he is

incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not

enough to just put the new address on a letter without indicating that it is a new address. If the

plaintiff has more than one pending case, he should indicate all of the case numbers in the

notification of change of address. He should also notify the defendants or defense counsel of his

new address.

       **SO ORDERED.**


       Dated at Hartford, Connecticut this    22nd        day of  November 2019.




_____/s/ DJS_____
            Dominic J. Squatrito
          United States District Judge